# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **JAMIE S. ROARK** | * | **CIVIL ACTION NO.   18-0736** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **ANDREW SAUL, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.   The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).   For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Jamie Roark filed the instant application for Title II Disability Insurance Benefits on June 4, 2015.   (Tr. 17, 119-120).   She alleged disability as of April 30, 2014, because of a back injury, and chronic back and hip pain.   (Tr. 129, 133).   The state agency denied the claim at the initial stage of the administrative process.   (Tr. 49-62).   Thereafter, Roark requested and received a January 25, 2017, hearing before an Administrative Law Judge ("ALJ").   (Tr. 28-48). However, in a June 9, 2017, written decision, the ALJ determined that Roark was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as an account executive and a graphic designer.   (Tr. 14-23).   Roark appealed the adverse decision to the Appeals Council.   On April 6, 2018, however, the Appeals Council denied Roark's request for review; thus the ALJ's decision

became the final decision of the Commissioner.    (Tr. 1-3).

On June 4, 2018, Roark sought review before this court.    She asserts several assignments of error, which may be recharacterized as follows:

1)    The ALJ's step two finding that the claimant's shoulder impairment was not severe because "it has not been present for 12 continuous months" is a misapplication of the duration requirement and, as such, cannot be sustained;

2)    For various reasons, the ALJ's residual functional capacity determination is not supported by substantial evidence; and

3)    The ALJ's step four finding that the claimant can return to her past relevant work as an account executive and graphic designer is not supported by substantial evidence.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).    Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).    The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.    *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.    Substantial evidence lies somewhere between a scintilla and a preponderance.    *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).    A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.    *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).    The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

2

Commissioner.   *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.   *See* 42 U.S.C. § 423(a)(1)(D).   The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ."   42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.   *See* 42 U.S.C. § 423(d)(2)(A).   Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.   *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.   *See* 20 C.F.R. §§ 404.1520, 416.920.   The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

> (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*,   239 F.3d 698, 704 -705 (5ᵗʰ Cir. 2001);   20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).   When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.   *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).   If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.   *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **ALJ's Findings**

### I.    **Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period.   (Tr. 19).   At step two, he found that the claimant suffers from the severe impairment of degenerative disc disease.   (Tr. 19-20).[1]   He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.   (Tr. 19).

### II.    **Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity

---

[1]   He further found that the claimant's medically determinable impairments of obesity and bilateral shoulder pain were not severe.   *Id*.

4

("RFC") to perform sedentary work,[2] except that she must alternate from sitting after every 30 minutes to standing for up to five minutes before returning to a seated position.   (Tr. 20-23).

## III.    Step Four

At step four, with the assistance of a vocational expert, the ALJ, determined that the claimant was able to return to her past relevant work as a graphic designer – sedentary, Dictionary of Occupational Titles ("DOT") Code # 141.061-018; and as an account executive/clerk – sedentary, DOT Code # 216.482-010, as those jobs are performed generally in the national economy.   (Tr. 23, 45-46).[3]

### Non-Exhaustive Chronology of Relevant Medical Evidence

**The Pain Clinic**

| Dates | Notes |
|-------|-------|
| February 6, 2014 | Roark had ongoing right lower back and buttock pain.   She had more pain because she had returned to work.   She was taking the week off because of the pain.   She had an FCE scheduled for the 27th.   She did not believe that she could work any longer.   She was unable to afford physical therapy.     She was diagnosed with lumbar spondylosis, without myelopathy, and sacroiliac pain.   She was encouraged to do stretching exercises.   (Tr. 295, 265-266). |
| March 6, 2014 | Roark had ongoing complaints of right lower back and gluteal pain.   She still was working full-time, and stated that since returning to work her pain had increased.   She had completed an FCE, and they were waiting |

[2] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[3] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

|  | on the results.   She continued to take Oxycontin 10 mg 3 times per day, Norco 10 mg, three times per day for breakthrough pain, Zanaflex, Celebrex, Neurontin, and Zofran.   She denied adverse effects with her medication.   She rated her pain as a 7/10.   She had no unusual anxiety or evidence of depression.   Diagnoses included lumbar spondylosis, without myelopathy, osteoarthritis – hip, fibromyalgia/myalgia, and pain in her limbs.   She was encouraged to do daily stretching exercises, and advised against bedrest.   (Tr. 267-269). |
|---|---|
| June 5, 2014 | Roark had ongoing complaints of lower back pain, with pain into her hips, as well as numbness and tingling extending down her legs and into the feet. Over the past month, the pain had been more neuropathic, and felt like ants were crawling all over her.   The nurse practitioner discussed a daily exercise program that included daily walking.   Since her last visit, she had stopped working.   As a result, she noted some improvement to her lower back pain.   (Tr. 270-272). |
| September 2, 2014 | Roark complained of chronic muscle tightness and spasms worsening in her neck and upper back area.   The pain was worse while turning her head. She requested trigger point injections because the pain was similar to previous pain that had been successfully treated with trigger point injections.   Her chronic lower back pain had improved since she "retired" from work.   Her current pain medication helped, and had no side effects.   She wanted to try physical therapy again.   Her cervical and lumbar range of motion were limited.   She was referred for physical therapy.   (Tr. 273-275). |
| October 9, 2014 | Roark underwent lumbar epidural injections.   (Tr. 276). |
| October 28, 2014 | Roark's lower back pain radiated into her hips and thighs bilaterally. She recently had a repeat lumbar epidural steroid injection with no significant improvement.   She had several interventional pain management procedures including lumbar discogram, which read as negative.   She also had medial branch blocks and a spinal cord stimulator implantation from a pain specialist that had not helped much at all.   Her only relief was with medication.   She requested an out-of-town neurological opinion.   *Id.*   Dr. Forte wanted to refer her to Dr. Mignucci in Plano, Texas.   Her gait was normal.   According to diagnostic studies, she had degenerated discs at each lumbar level, greatest at L4-5.   (Tr. 244-246). |
| January 22, 2015 | At this point in time, Roark was resolved to the fact that she was going to continue experiencing chronic back pain.   However, her pain was fairly well controlled with medication.   She denied any side effects.   She showed no signs of drug-seeking behavior, and was in the process of filing for disability.   Upon examination, she had no unusual anxiety or evidence of depression.   Her gait was normal, with limited range of motion of the lumbar spine.   She was diagnosed with lumbar spondylosis without myelopathy and herniated disc with myelopathy. (Tr. 280-282). |

| April 21, 2015 | Roark returned to the pain clinic for her chronic lower back pain that radiated into the buttocks bilaterally.   Her pain was worse while standing, bending, or sitting.   OxyContin 20, twice per day, was not controlling her pain.   She still was in the process of applying for disability.   (Tr. 283-285). |
|---|---|
| May 19, 2015 | Roark had ongoing dull ache in her lower back.   She had a stiff gait, and limited lumbar extension.   (Tr. 286-288). |
| June 6, 2015 | Roark had ongoing lower back pain that radiated to her hips and thighs.   Her medication was changed to MS Contin.   Her insurance company had requested that she try morphine instead of OxyContin.   She asked to hold off on SI joint injections.   (Tr. 289-291). |
| July 16, 2015 | Roark wanted to keep the MS Contin and believed that she could increase her activity level some.   She denied any side effects other than occasional blurred vision with reading that she did not attribute to the pain medication.   (Tr. 292-294). |
| August 18, 2015 | Roark rated her pain as a 7/10.   Straight leg raise was negative bilaterally.   No reflex, motor, or sensory deficits were noted in her lower extremity.   The nurse practitioner recommended walking and stretching, and no bedrest.   (Tr. 339-341). |
| September 15, 2015 | Roark reported increased pain with sitting to standing, walking, bending, and sitting.   She rated her pain as a 7/10.   She denied side effects from her medication.   The medication partially reduced her pain and increased her quality of life.   Her gait was normal.   (Tr. 342-344). |
| October 28, 2015 | Roark presented that day to discuss her disability paperwork.   Her disability had been denied, and she was requesting paperwork for her attorney.   Roark became quite distressed when the nurse practitioner informed her that Dr. Forte did not complete disability paperwork.   She spoke to someone else at the clinic stating that she simply wanted a letter for her attorney stating that she was disabled.   Dr. Forte stated that Roark's attorney needed to provide a letter to the clinic stating his specific request.   They discussed a possible FCE in the future, which the nurse practitioner recommended.   (Tr. 345-347). |
| December 14, 2015 | Dr. Forte wrote a letter to plaintiff's attorney, in which he stated, *inter alia*, that Roark had difficulty with an eight hour workday, by her description, because she was limited in her ability to carry out her normal job duties.   (Tr. 296). |
| January 7, 2016 | Roark returned to the pain clinic with lower back pain that radiated into her hips and thighs.   Her pain was worse with standing and walking.   (Tr. 348-350). |
| March 31, 2016 | Roark's ongoing lower back pain radiated to her hips and thighs.   Her pain was fairly consistent, but controlled with medication.   She showed no signs of drug-seeking behavior.   From an interventional standpoint, the clinic had nothing to offer her.   (Tr. 352-354). |
| April 27, 2016 | Dr. Forte completed an attorney-supplied medical statement regarding low back pain.   (Tr. 299-300).   He indicated that Roark had limitation |

|  | of motion in the spine, the need to change position more than once every two hours, and chronic non-radicular pain and weakness.   He characterized her pain as moderate.   He further indicated that Roark could stand and sit at one time for up to 30 minutes.   She could work two hours per day.   She occasionally could lift ten pounds and frequently lift five pounds.   She occasionally could bend and stoop. (Tr. 299-300). |
|---|---|
| April 29, 2016 | Dr. Forte completed an attorney-supplied medical statement concerning plaintiff's chronic pain syndrome. (Tr. 297-298).   He indicated that Roark suffered marked restriction of activities of daily living and marked difficulty in maintaining social functioning.   However, deficiencies of concentration, persistence, and pace were not present.   (Tr. 297-298). |
| August 1, 2016 | Roark's lower back pain was a constant ache, worse with prolonged sitting. She showed no signs of drug-seeking behavior.   There was no unusual anxiety or evidence of depression.   (Tr. 358-360). |
| October 31, 2016 | Roark complained of bilateral shoulder pain for which she recently had sought treatment at the orthopedic clinic.   She planned on having right shoulder surgery the following year.   She did have limited range of motion and pain in her head and neck.   She was unable to adduct or abduct either shoulder.   She was requesting trigger point injections to her neck and shoulder area.   She said that she had had those previously, and they had worked very well for her.   She rated her pain as a 7/10. She had an antalgic gait.   (Tr. 361-363). |
| November 28, 2016 | Roark received trigger point injections at the pain clinic.   She received diagnoses for opioid dependence, cervicalgia, and low back pain.   (Tr. 364-365). |
| December 28, 2016 | Roark returned to the pain clinic for ongoing back pain that radiated to her hips bilaterally.   Overall, her pain was tolerable.   She did obtain some relief from the trigger point injections.   She was in the process of filing for disability, and had a January court date.   (Tr. 366-368). |
| January 24, 2017 | Roark reported that she continued to keep her pain manageable with her current pain medication regimen.   She denied any side effects.   The clinic did not recommend injections at that time.   She had some tendinitis in her right shoulder and she was being seen by an orthopedist for that. |

**Neurospine Surgical Consultants in Plano, Texas**

On November 4, 2014, Roark was seen at Neurospine Surgical Consultants in Plano,

Texas.  (Tr. 228-234, 252-254).   Upon examination, she had an antalgic gait, and full range of

motion of the cervical and lumbar spine, except pain upon lumbar extension.   *Id.*   There was no

muscle wasting and motor strength in all groups was 5/5.   *Id.*

A November 6, 2014, MRI of the lumbar spine showed shallow bulge at T11-T12 that did

not deform the lower thoracic cord.   (Tr. 235).   The facet joints were unremarkable.   *Id.*   The

other lumbar discs were normal in height and contour.   *Id.*   The spinal canal dimensions were

normal.   *Id.*   The L4-5 and L5-S1 facet joints exhibited minimal degenerative changes

bilaterally.   *Id.*   The other lumbar facet joints were unremarkable.   *Id.*   There was no significant

central or foraminal stenosis over the lumbar segment.   *Id.*

On November 7, 2014, Luis Mignucci, M.D., noted that he had had the pleasure of seeing

Roark in his office that day.   (Tr. 250, 238-239).   A new lumbar MRI showed very minimal

bulging disc at T11-T12 with no canal stenosis.   *Id.*   There was facet joint disease at L4-L5 and

L5-S1, with no significant stenosis.   *Id.*   He noted that Roark had tried all conservative care

possible, including dorsal column stimulator trial and implant.   *Id.*   She had had SI joint

injections, facet injections, but nothing seemed to work.   *Id.*   He recommended core

stabilization exercises, and that she hire a personal trainer to work on her core strength.   *Id*.   He

also prescribed a compound pharmacy cream.   *Id.*   He opined that she did not require surgery,

and advised her not to undergo any surgical modalities.   *Id.*

**The Orthopedic Clinic**

Following a February 3, 2009, motor vehicle accident, Roark saw Jeffrey Counts, D.O.,

who diagnosed her with spondylosis C5-6, cervical strain, and lumbar strain.   (Tr. 302-303).   A

February 17, 2009, MRI of the lumbar spine showed mild apophyseal joint hypertrophy in the

lower lumbar region.   (Tr. 305-306).   There was minor spondylosis and slight bulging at L4-5,

but no impressive herniation or stenosis in the lumbar region otherwise.   *Id.*   There were mild

degenerative changes and slight bulging or protrusion at the T10-12 levels.   *Id.*   Although there

was mild cord impingement, there was no impressive stenosis.   *Id.*

9

On April 5, 2012, Roark returned to Dr. Counts for a recheck of her lower back.   (Tr. 310-312).   She said that she recently had been under the care of the "guys at the pain clinic." *Id.*   She returned for discussion and reevaluation for her back.   *Id.*   Examination revealed limited motion of the lumbar spine secondary to pain.   *Id.*   She had diffuse tenderness to palpation throughout the lumbosacral region.   *Id.*   She had negative straight leg raise, with normal deep tendon reflexes, good motor tone, and muscle function noted in the lower extremities.   *Id.*   Sensation was intact to both lower extremities as well.   *Id.*   Review of the 2011 MRI showed no significant disc pathology, no central or foraminal compromise, and no obvious evidence of bony pathology.   *Id.*   Counts diagnosed chronic low back pain.   *Id.*   He agreed that a rheumatology consult was in order.   *Id.*   However, he had nothing to offer her other than physical therapy again.   *Id.*

On September 23, 2016, Roark returned to Dr. Counts.   (Tr. 313-315).   At that time, she complained of left and right shoulder pain.   *Id.*   She had no anxiety or depression.   *Id.*   Roark completed forms at Dr. Counts' office indicating that both her shoulders were hurting her, and that the symptoms began in November 2014.   (Tr. 320).   The pain in her shoulders radiated down her arms and into her fingers.   *Id.*

A September 27, 2016, MRI of the left shoulder showed mild tendinitis/tendinosis of the supraspinatus insertion.   (Tr. 316).   There was no acute intraarticular finding.   *Id.*   MRI of the right shoulder showed calcific tendinitis of the infraspinatus insertion with degenerative changes of the adjacent greater tuberosity.   *Id.*   There was a very small linear partial thickness articular surface tear, and slight adjacent subacromial bursitis.   *Id.*   The imaging also revealed minor degenerative changes or old tear within the posterior labrum.   *Id.*

Roark returned to Dr. Counts on October 6, 2016.   (Tr. 318-319).   Her shoulders were her primary complaints.   *Id.*

**Non-examining Agency Physician**

On September 10, 2015, non-examining agency physician, Martha Lauster, M.D., reviewed the administrative record and completed a physical residual functional capacity assessment in which she opined that Roark could occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds.  (Tr. 53-55).   Roark could stand and/or walk for a total of two hours and sit for a total of six hours in an eight our workday.  *Id*.   Pushing and pulling were unlimited.  *Id*.   Overhead reaching was limited bilaterally to occasionally.  *Id*. Lauster noted that imaging did not show advanced degenerative changes.   *Id*.

<u>Analysis</u>

**I.    Step Two**

Plaintiff contends that the ALJ erred by failing to recognize that her shoulder impairment constituted a severe impairment at step two of the sequential evaluation process.   In his decision, the ALJ stated that, "[t]his condition has not be [sic] present for 12 consecutive months, and therefore would not be severe.   Further, the claimant has not alleged any difficulties from this condition, either in her application or at hearing.   This supports a conclusion that she is not limited in reaching overhead bilaterally."  (Tr. 19-20).

As plaintiff pointed out, however, the regulations specify that to meet the duration requirement, the impairment "must last, *or be expected to last* for at least 12 months or result in death."  20 C.F.R. § 404.1509 (emphasis added).   Furthermore, plaintiff complained about her shoulder pain to the nurse practitioners as early as July 2015.  *See* Tr. 337, 340, 343, 346.   Of course, the cause of her shoulder pain was confirmed via MRI over one year later in September 2016. (Tr. 313-15, 320).   Plaintiff anticipated that she would not undergo surgery to address the condition until summer 2017.  *See* Tr. 361.   In short, the ALJ's determination that plaintiff's shoulder

impairment was not severe because it failed to meet the duration requirement is not supported by substantial evidence.

The ALJ also discounted the severity of the shoulder impairment because plaintiff did not allege any difficulties from the condition, either in her application or at the hearing.   In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)).

However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required.   *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987).   Rather, under these circumstances, the effect of the ALJ's step two determination is measured by whether his step three finding and RFC are supported by substantial evidence.   This is so because once at least one severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis.   *See* 20 C.F.R. §§ 404.1545, 416.945.

At the hearing, plaintiff testified that she was receiving treatment for her shoulder, and anticipated having surgery the following summer.   (Tr. 37-38).   Needless to say, these treatment plans suggest the presence of an impairment that more than minimally impacted plaintiff's ability to work.

## II.    RFC

In his decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, the impressions of plaintiff's

treating physician, Dr. Forte, and the assessment of the non-examining agency physician, Dr.

Lauster.   (Tr. 20-23).   In deriving plaintiff's RFC, the ALJ resolved the opinion evidence as

follows,

> [t]he undersigned gives little weight to the[ ] varying opinions from Dr. Forte, as
> they are progressively more restrictive and yet, not consistent with the available
> treatment records.   Further, it is inconsistent with the records as a whole . . . The
> State agency medical consultant opined that the claimant could perform sedentary
> work, with only occasional lifting overhead bilaterally.   The undersigned gives
> partial weight to this opinion, in that the undersigned agrees that the claimant is
> limited to sedentary work, but finds no further evidence that the claimant had
> problems reaching overhead bilaterally due to a shoulder impairment.

(Tr. 46-47) (internal citation omitted).

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence, *inter alia*,

because his proffered rationale for rejecting the opinion of her treating physician, Dr. Forte, is

not supported by good cause.   The court agrees.

Ordinarily, a treating physician's opinion on the nature and severity of a patient's

impairment will be given controlling weight if it is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial

evidence."   20 C.F.R. § 404.1527(d)(2).   "[T]he ALJ is free to reject the opinion of any

physician when the evidence supports a contrary conclusion."   *Martinez v. Chater*, 64 F.3d 172,

175-76 (5th Cir.1995) (citation omitted).   However, an ALJ cannot reject a medical opinion

without an explanation supported by good cause.   *See Loza v. Apfel*, 219 F.3d 378, 395 (5th

Cir.2000) (citations omitted).

Here, the ALJ discounted the opinion of Dr. Forte because his opinions became

progressively more restrictive and were inconsistent with available treatment records.   However,

Dr. Forte's opinions became more restrictive over time because, initially, he simply wrote a letter

that generally described plaintiff's condition and limitations.   Later, Forte completed attorney-

13

supplied medical source statements that included more detailed and specific areas of inquiry. Furthermore, the ALJ did not identify or specify the treatment records that he found to be inconsistent with the limitations recognized by Dr. Forte.

The court also notes that the ALJ partially credited the finding of the non-examining agency physician, Dr. Lauster – at least insofar as Lauster opined that plaintiff was capable of sedentary work.   However, a non-examining physician's opinion does not provide good cause for an ALJ to discount the findings of an examining physician.  *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician).[4]   In any event, the non-examining physician's full assessment is *not* consistent with the ALJ's RFC.   The ALJ discounted Dr. Lauster's overhead reaching restriction because the ALJ determined that plaintiff did not have a cognizable shoulder impairment.   That rationale, however, is not supported by substantial evidence.   *See* discussion, *supra*.

Furthermore, the Fifth Circuit has remarked that, "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist,* an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."   *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added).   In this case, there was no other evidence from a treating or examining physician that controverted the impressions of plaintiff's

---

[4]   The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician."   *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990) (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

treating physicians.   Thus, the ALJ was obliged to address each of the § 404.1527(d)(2) (now §

404.1527(c)) factors.[5]   This, he did not do.

In the end, it is apparent that the ALJ autonomously derived plaintiff's RFC, without the

benefit of a supportive medical opinion.   In *Ripley v. Chater*, as here, the Commissioner argued

that the medical evidence substantially supported the ALJ's decision.   *Ripley v. Chater*, 67 F.3d

552, 557-558 (5th Cir. 1995).   The Commissioner pointed to medical reports discussing the

extent of plaintiff's injuries, including a four year history of back troubles.   *Id*.   However,

without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the

evidence substantially supported the ALJ's residual functional capacity assessment because the

court could not determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*.

The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which,

when read in proper context, failed to support the ALJ's residual functional capacity assessment.

*Id*.

The instant case is materially indistinguishable from *Ripley, supra*.   The record is devoid

of a medical source statement that parallels the ALJ's RFC.   Moreover, plaintiff's own

testimony was not consistent with the ALJ's RFC.   (Tr. 33, 39).   Under these circumstances,

the court is compelled to find that the ALJ's assessment is not supported by substantial evidence.

*See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not

rely on his own unsupported opinion as to the limitations presented by the applicant's medical

conditions"); *Ripley, supra* (substantial evidence lacking where:   no medical assessment of

claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's

---

[5] Although § 404.157(c) was amended, the changes do not apply to claims filed before March 27, 2017.

assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

### III.    Step Four and Remand

Because the foundation for the ALJ's step four determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, likewise is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.   42 U.S.C. §405(g).   When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.   *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).   The instant record is not so disposed.   Plaintiff's residual functional capacity assessment remains indeterminate.

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings

consistent herewith.[6]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen** **(14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of July 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[6] The court need not consider plaintiff's additional arguments. These issues may be addressed upon remand.